## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRANISE WEST, individually and on behalf of all others similarly situated,<br><br>                  Plaintiff,<br><br>- against -<br><br>MOLSON COORS BEVERAGE COMPANY USA, LLC,<br><br>                  Defendant | 1:23-cv-07547<br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff Tranise West ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Molson Coors Beverage Company USA, LLC ("Defendant") sells "Mimosa Hard Seltzer" under its Vizzy brand ("Product").

 

2. A mimosa is defined as a combination of champagne and orange juice.



3. Based on champagne, it is not surprising mimosas originated in France.

4. According to one story, the mimosa may have been first made for Napoleon during a victory celebration amidst a champagne shortage.

Napoleon Before Mimosa



5. A quick-thinking attendant added fresh squeezed orange juice to the

small amount of champagne remaining, telling Napoleon this new drink was made especially for him.

6. At the next morning's lavish breakfast, the Emperor demanded this new beverage, which would later be called "mimosa."

7. Since then, the mimosa has been a staple of brunch, a portmanteau of breakfast and lunch, occurring in the late morning and early afternoon.



8. Mimosas are the cocktail most associated with brunch, as the lightness of champagne dilutes the sweet orange juice, complementing the types of foods typically served at this meal.

9. The public connects brunch with mimosas, as many restaurants tout "bottomless mimosas" as part of their brunch menus.



10. Defendant touted this connection when the Product was introduced, seeking to capitalize on the increasing number of Americans who enjoy brunch, proclaiming, "Brunch Just Got Real" along with "Mimosa Hard Seltzer" that is "Made With Real Orange Juice."



11. Research shows that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate [any] product," thereby

4

"develop[ing] sensory expectations" about attributes such as quality, composition, taste and the source of that taste.[1]

12. Consistent with these principles, Congress adopted the Federal Alcohol Administration Act ("FAAA") in 1935, which set standards and regulations for what companies were required to tell consumers about the alcoholic beverages they sell. 27 U.S.C. § 201 *et seq.* and Title 27, Code of Federal Regulations ("C.F.R."), Parts 1 to 39, Tax and Trade Bureau ("TTB")

13. New York adopted these laws through its Alcoholic Beverage Control ("ABC") Law and accompanying regulations. *See*, i.e., ABC § 107-a; 9 NYCRR § 25.1 *et seq.*[2]

14. These laws prohibit misleading statements or representations on the labeling of malt beverages, irrespective of falsity, with respect to a product's age, origin, identity, or other characteristics. 27 C.F.R. § 7.122(a); 9 NYCRR § 84.1(a) (adopting TTB labeling regulations).

---

[1] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.

[2] New York Codes, Rules and Regulations ("NYCRR"), Title 9, Executive Department, Subtitle B, Division of Alcoholic Beverage Control, Chapter I - Rules of The State Liquor Authority, Parts 25 to 106.

15. The ways in which statements or representations can be misleading includes directly creating a misleading impression or indirectly, through ambiguity, omission, inference, or by the addition of other matter. 27 C.F.R. § 7.122(b)(1).

16. For example, an otherwise truthful statement may be misleading because of the omission of material information, the disclosure of which is necessary to prevent the statement from being misleading. 27 C.F.R. § 7.122(b)(1).

17. Malt beverages are required to contain a statement of composition which clearly identifies its base class, such as "beer," "lager beer," "lager," "ale," "porter," "stout," or "malt beverage" and any added flavorings. 27 C.F.R. § 7.147(a); 27 C.F.R. § 7.147(b)(1)-(2); 27 C.F.R. § 7.63(a)(2) (requiring class, type or other designation).

18. The Product's labeling as "Mimosa Hard Seltzer" is false and misleading for multiple reasons.

19. First, purchasers expect a drink labeled as a mimosa hard seltzer to contain mimosa ingredients like orange juice and champagne.

20. Though the mimosa hard seltzer contains orange juice, it lacks the unique sparkling wine known as champagne.

21. Since a mimosa is a simple drink without complicated ingredients, the combination of champagne and orange juice can be sold in a canned, ready-to-drink ("RTD") format.

22. However, the fine print ingredient list reveals the only bubbly liquid it contains is not champagne but "Sparkling Water."



**INGREDIENTS:** SPARKLING WATER, ALCOHOL, ORANGE JUICE CONCENTRATE, NATURAL FLAVOR, CITRIC ACID, TARTARIC ACID, SODIUM CITRATE, DRIED ACEROLA CHERRY JUICE, STEVIA.

23. Even if purchasers find and read the ingredients, they will be misled because it lists only "Alcohol" instead of truthfully identifying its source as not from champagne, but sugar or another fermentable source, such as "Alcohol (from fermented sugar)."

24. Second, "Mimosa Hard Seltzer" does not tell purchasers they are buying a malt beverage, equivalent to a flavored beer, instead of a drink containing champagne. 27 C.F.R. § 7.63(a)(2).

25. Third, "Mimosa Hard Seltzer" is not the name of the product as known

7

to the trade. 27 C.F.R. § 7.141(a).

26. Fourth, to the extent the Product can be described as a malt beverage specialty product which does not fall under pre-existing designations such that "Mimosa Hard Seltzer" is its distinctive or fanciful name, it lacks a statement of composition. 27 C.F.R. § 7.141(b)(1)-(2).

27. That "hard seltzer" preceded by "mimosa" would not meet these requirements has been confirmed by the TTB, as failing to provide truthful labeling to consumers.

28. This is because "hard seltzer" lacks a commonly recognized or mandated definition.

29. Despite the hard seltzer boom, most consumers do not know the intricacies of formulating alcoholic beverages and particularly, malt beverage specialty products.

30. These products start with a neutral, flavorless alcohol obtained through fermentation of sugar or wheat, followed by addition of flavoring materials and other ingredients.

31. Fifth, the statement of composition of "Mimosa Hard Seltzer" is required to, but fails, to disclose the addition of the artificial sweetener of stevia, revealed in the fine print on the ingredient list. 27 C.F.R. § 7.147(b)(4).

32. While stevia originates from the stevia rebaudiana plant in the jungles of

South America, extracting its key sweet compounds, such as stevioside and rebaudioside A, is not a natural process.

33. This requires over forty separate steps including purification, solvents like ethanol, and sometimes modification of extracts with enzymes or genetically engineered components, in an industrial laboratory, to create a molecule 200 times sweeter than sugar.

34. This level of processing is inconsistent with a natural sweetener.

35. Since stevia is not a natural sweetener, it is an artificial sweetener and must be declared as part of the Product's statement of composition, which it is not.

36. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than approximately $17.99 for a 12 pack of 12 oz cans, and $3.49 for one 24 oz can, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

37. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

38. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

39. Plaintiff is a citizen of New York.

40. Defendant is a Delaware limited liability company.

41. Defendant is a citizen of Illinois and Wisconsin based on the citizenship of its members.

42. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

43. The Court has jurisdiction over Defendant because it transacts business within New York and sells the Product to consumers within New York from numerous retail locations, such as grocery stores, convenience stores, bodegas, gas stations, big box stores, drug stores and/or warehouse club stores.

44. Defendant transacts business in New York, through the sale of the Product to consumers within New York from numerous retail locations, such as grocery stores, convenience stores, bodegas, gas stations, big box stores, drug stores and/or warehouse club stores.

45. Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

46. Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial

revenue from the sale of the Product in this State.

47. Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

48. Venue is in this Court because Plaintiff is a resident of Kings County.

49. Venue is in this Court because a substantial part of the events or omissions giving rise to these claims occurred in Kings County, which is where Plaintiff's causes of action accrued.

50. Plaintiff purchased, used and/or consumed the Product in reliance on the labeling identified here in New York.

51. Plaintiff became aware the labeling was false and misleading in Kings County.

## PARTIES

52. Plaintiff Tranise West is a citizen of Kings County, New York.

53. Defendant Molson Coors Beverage Company USA, LLC is a Delaware limited liability company.

54. Defendant's members are citizens of Illinois and/or Wisconsin.

55. Defendant's principal place of business is in Illinois.

56. Plaintiff purchased the Product between early 2022 and the present, at retail locations, such as grocery stores, convenience stores, bodegas, gas stations, big box stores, drug stores and/or warehouse club stores, in this State.

57. Plaintiff is like most consumers who look to the front label of a product to learn what it is and its key features.

58. Plaintiff is like most consumers and prefers alcoholic beverages based on the standard and expected ingredients, like champagne, instead of a malt beverage which attempts to imitate champagne.

59. Plaintiff read and relied on the front label statements of "Mimosa Hard Seltzer," "Made With Real Orange Juice" and/or the pictures of oranges to expect the Product contained champagne.

60. Based on her experience with how alcoholic beverages based on malt beverages were labeled, with statements disclosing their composition in a prominent front label and/or package location, i.e., "beer with natural flavors," Plaintiff expected that if the Product purported only to "taste" like a mimosa, such statements would have appeared.

61. Plaintiff expected more than a mimosa taste, but the mimosa ingredients of orange juice and champagne.

12

62. Plaintiff expected the sparkling wine of champagne instead of sparkling water.

63. Plaintiff bought the Product at or exceeding the above-referenced price.

64. Plaintiff paid more for the Product than she would have had she known it did not contain champagne.

65. The Product was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

66. Plaintiff seeks to represent the following class:

> All persons in the State of New York who purchased the Product in New York during the statutes of limitations for each cause of action alleged.

67. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

68. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

69. Plaintiff is an adequate representative because her interests do not conflict with other members.

13

70. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

71. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

72. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
### New York General Business Law ("GBL") §§ 349 and 350

73. Plaintiff incorporates by reference paragraphs 1-36.

74. The purpose of the GBL is to protect consumers against unfair and deceptive practices.

75. The labeling of the Product violated the GBL because the front label and package statements and omissions of "Mimosa Hard Seltzer," "Made With Real Orange Juice," pictures of oranges and the absence of any statement of composition was unfair and deceptive to consumers.

76. These statements and omissions caused Plaintiff to believe the Product contained champagne.

77. Plaintiff paid more for the Product, would not have purchased it or paid as much if she knew that it did not contain champagne.

78. Plaintiff seeks to recover for economic injury and/or loss she sustained

based on the misleading labeling and packaging of the Product, a deceptive practice under this State's consumer protection laws, by paying more for it than she otherwise would have.

79. Plaintiff will produce evidence showing how she and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, and other advanced methodologies.

80. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

## COUNT II
### Breach of Express Warranty

81. Plaintiff incorporates by reference paragraphs 1-36.

82. The Product was manufactured, identified, marketed, and sold by Defendant and expressly warranted to Plaintiff and class members that it contained champagne.

83. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and/or targeted digital advertising.

84. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as canned alcoholic beverages which contained higher quality ingredients associated with their namesake drinks, like champagne in a

mimosa, and developed its marketing and labeling to directly meet those needs and desires.

85. Defendant's representations affirmed and promised that the Product contained champagne.

86. Defendant described the Product so Plaintiff and consumers believed it contained champagne, which became part of the basis of the bargain that it would conform to its affirmations and promises.

87. Plaintiff recently became aware of Defendant's breach of the Product's express warranty.

88. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and/or their employees.

89. Plaintiff hereby provides notice to Defendant that it breached the Product's express warranty.

90. Defendant received notice and should have been aware of these issues due to complaints by third parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

91. The Product did not conform to its affirmations of fact and promises due to Defendant's actions, because it did not contain champagne.

92. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## COUNT III
<u>Unjust Enrichment</u>

93. Plaintiff incorporates by reference paragraphs 1-36.

94. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

**JURY DEMAND AND PRAYER FOR RELIEF**

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated: October 10, 2023

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Notice of Lead Counsel Designation:*
*Lead Counsel for Plaintiff*

Spencer Sheehan

Sheehan & Associates, P.C.

James Chung
Chung Law Office, P.C.
43-22 216th St
Bayside NY 11361
(718) 461-8808
jchung_77@msn.com