```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
  EMANUELL WEST and RICHARD                                 :   **MEMORANDUM DECISION AND**
  ALONZO, individually and on behalf of all                 :   **ORDER**
  others similarly situated,                                :
                                                            :   23-cv-7547 (BMC)
                                                            :
                                         Plaintiffs,        :
                                                            :
                          - against -                       :
                                                            :
                                                            :
  MOLSON COORS BEVERAGE                                     :
  COMPANY USA, LLC,                                         :
                                                            :
                                                            :
                                         Defendant.         :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

"In victory, you deserve Champagne; in defeat, you need it." If the parties were to heed this wisdom, apocryphally attributed to Napoleon Bonaparte, then both sides might toast this decision with a glass of the good stuff. But they wouldn't toast with defendant's Vizzy Mimosa Hard Seltzer because it has no champagne in it.

Plaintiffs Emanuell West and Richard Alonzo bring this action on behalf of themselves and a putative class, alleging that defendant Molson Coors violated New York General Business Law ("GBL") Sections 349 and 350 by deceiving consumers into believing that Vizzy contained champagne when it did not.[1] Because plaintiffs have failed to plausibly allege that Vizzy would mislead a significant portion of reasonable consumers, defendant's motion to dismiss is granted.[2]

---

[1] Plaintiffs withdrew their claims for breach of express warranty and unjust enrichment.

[2] As the Court previously held, defendant's motion to dismiss, which was filed in response to the initial complaint, shall apply with equal force to plaintiffs' amended complaint.

## BACKGROUND

Plaintiffs claim they purchased defendant's beverage under the mistaken impression that it contained champagne and that they would not have purchased it if they knew it did not.

Defendant sells its beverage for $17.99 per 12-can box. The amended complaint includes photographs that appear to show the front of the can, the ingredient label, the box, and an advertisement for the beverage. All representations and omissions at issue in this action are reflected in those four photographs, which are reproduced below.



INGREDIENTS: SPARKLING WATER, ALCOHOL, ORANGE JUICE CONCENTRATE, NATURAL FLAVOR, CITRIC ACID, TARTARIC ACID, SODIUM CITRATE, DRIED ACEROLA CHERRY JUICE, STEVIA.





**DISCUSSION**

**I.       Standing**

Defendant argues that plaintiffs have not alleged an injury in fact. "To satisfy the requirements of standing under Article III of the Constitution, a plaintiff must establish three elements: (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Sharpe v. A&W Concentrate Co., 481 F. Supp. 3d 94, 100 (E.D.N.Y. 2020) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). "In order to establish standing, the plaintiff's injury must have resulted from the alleged deceptive act and the injury must be pled with specificity." Olinsky & Assocs., PLLC v. Nutting, No. 20-cv-1142, 2021 WL 2779001, at *7 (N.D.N.Y. July 2, 2021).

Plaintiffs' complaint alleges that they would not have purchased defendant's product if they knew that it lacked champagne. Put differently, plaintiffs only purchased the seltzer because defendant allegedly misled them into believing it had champagne in it, and they claim that defendant falsely advertised the product to create that misimpression. As a result, plaintiffs claim they were injured to the tune of the seltzer's purchase price.

Defendant responds that plaintiffs can only establish standing by showing that they paid more for the product than it was worth. According to defendant, because plaintiffs have not alleged that the product is defective or otherwise worth less than what they paid for it, they have not suffered an injury in fact.

There is some disagreement among the courts about whether standing in false advertising cases requires plaintiffs to plead that they paid a price premium, or if it is sufficient to allege that

4

they would not have purchased the product in question but for the alleged misrepresentation. Compare Valiente v. Publix Super Markets, Inc., No. 22-cv-22930, 2023 WL 3620538, at *4 (S.D. Fla. May 24, 2023) (finding no standing where plaintiff "would not have bought a product, or would have paid less for it, if not for its allegedly deceptive label") with Wiggins v. Unilever United States, Inc., 684 F. Supp. 3d 127, 139 (S.D.N.Y. 2023) (finding standing where plaintiffs "would not have purchased the products had they known they were not hypoallergenic").

The Second Circuit has not addressed this issue, but district courts within our Circuit "have consistently ruled that plaintiffs satisfy the requirements of Article III standing when they plead that defendants' misrepresentations caused them to purchase a product that they otherwise would not have purchased." Wiggins, 684 F. Supp. 3d at 141. Indeed, all the cases defendant cites in support of this portion of its standing argument come from outside the Second Circuit.

I join many of my colleagues in the Second Circuit in concluding that consumers suffer an injury in fact when, in reliance on alleged misrepresentations, they buy a product that they otherwise would not have purchased. I fail to see a meaningful distinction between a price-premium injury and a but-for purchasing injury. When consumers purchase a product for $10, but would have only paid $5 (and it would have only been worth $5) if not for the misrepresentation, they are injured to the extent of the $5 delta. When consumers purchase a product for $10, but would not have purchased the product at all but for the misrepresentation, they are injured to the extent of the full $10 purchase price.[3] In both situations, the purchaser spends (i.e., loses) some amount of money by relying on an allegedly false representation about the product, which is sufficient to establish an injury in fact. Plaintiffs' allegation that they

---

[3] This logic holds true if the product is genuinely "worth" $10. Purchasers cannot be expected to resell the goods to recoup on losses (assuming there even exists a second-hand seltzer market), so the fact that they received an item of theoretically equivalent value is of no moment. The injury-in-fact analysis would change if the product had a money-back guarantee, as in Valiente, but defendant offered no such policy.

5

would not have purchased the product if they knew it did not contain champagne, which I must accept as true at this stage of litigation, thus constitutes an injury in fact. Defendant's motion to dismiss for lack of standing is denied.

## II. Adequacy of Claims

Defendant also moves to dismiss this action for failure to state a claim. See Fed R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Rule 12(b)(6), "the Court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor." Gala v. City of New York, 525 F. Supp. 3d 425, 429 (E.D.N.Y. 2021) (cleaned up). To survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Sections 349 and 350 of the GBL prohibit "[d]eceptive acts and practices" and "[f]alse advertising," respectively, "in the conduct of any business, trade or commerce or in furnishing of any service." The Second Circuit defines deceptive acts and practices as those that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000). The "reasonable consumer" standard is the same under both GBL Sections 349 and 350. See Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 500 (2d Cir. 2020). To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015).

"[I]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." Chen, 954 F.3d at 500. To survive a motion to dismiss claims brought under GBL Sections 349 and 350, "[p]laintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Jessani v. Monini N. Am., Inc., 744 F. App'x 18, 19 (2d Cir. 2018). In determining deceptiveness, courts "consider the challenged advertisement as a whole, including disclaimers and qualifying language." Mantikas v. Kellogg Co., 910 F.3d 633, 636 (2d Cir. 2018).

In a recent decision from this District, Judge Brown distilled the following factors from the caselaw as particularly relevant when considering whether reasonable consumers would be misled to believe that a product contains an ingredient that it does not:

> [T]hese five elements – (1) the presence or absence of express representations, (2) context of the alleged misrepresentation, (3) etymological analysis, (4) allegations about competitor products and (5) consumer survey evidence – provide a useful framework in analyzing the sufficiency of allegations concerning consumer expectations under GBL § 349 and § 350.

Duncan v. Kahala Franchising, L.L.C., No. 22-cv-7841, 2024 WL 1936053, at *5 (E.D.N.Y. May 2, 2024). I agree with Judge Brown that these non-exclusive factors accurately capture what courts in this Circuit think about when determining whether a plaintiff has plausibly alleged a violation of GBL Sections 349 and 350.

Because plaintiffs' complaint does not include any allegations regarding competitor products or consumer surveys, those final two factors do not apply here. I apply the first three as an analytical guide, although I recognize, as did Judge Brown, that they are not a "formalized balancing test." See id.

A.      **Express Representations**

Plaintiffs do not allege that there are any express representations about champagne on the product's packaging. The advertisement, box, and individual cans do not directly state that the beverage contains champagne. This element weighs in defendant's favor, although the lack of an express misrepresentation is not fatal to plaintiffs' claims. See id.

B.      **Etymology**

There can be little debate about the etymology of the word "mimosa." It historically refers to a cocktail composed of champagne and orange juice, although traditionalists would sadly admit that it is often made today with sparkling wines other than champagne and fruit juices other than orange juice.

Defendant does not deny the linguistic linkage between mimosas and champagne. Instead, it argues that the phrase "hard seltzer" modifies the word "mimosa," which makes clear to consumers that the beverage is not a mimosa at all. Rather, it is a hard seltzer that is flavored like a mimosa and, as such, there is no reason to believe it would contain champagne.

Both parties describe the meteoric rise of the hard seltzer category of alcoholic beverages. Although the popularity of the beverage category is relatively new, the term is etymologically rooted in two words with longstanding meanings in the beverage industry: "hard" connotes "alcoholic," and "seltzer" means "sparkling water." The alcohol in a generic hard seltzer could theoretically be any type of consumable alcohol, including champagne. Although defendant's proffered definitions do not identify the types of alcohol commonly used in hard seltzer, other

definitions specify fermented cane sugar and malted barley – not champagne or any other type of wine – as the usual suspects.[4]

The etymology of "mimosa hard seltzer" as a combined term is a mixed bag. "Mimosa" on its own strongly suggests the presence of champagne and the ordinary meaning of "hard seltzer" is not mutually exclusive of champagne. Thus, looking at those words in a vacuum, the etymology factor slightly favors plaintiffs' position. But the full context of the packaging, viewed through the eyes of a reasonable consumer, sharply reduces any ambiguity caused by the etymological association between mimosas and champagne.

### C. Context

Plaintiffs argue that several contextual aspects of the packaging reasonably misled them to believe that Vizzy contained champagne. Plaintiffs emphasize that the product name – Mimosa Hard Seltzer – suggests that the drink, like a mimosa, contains champagne. They also claim that a tagline in the product's advertising – "Brunch Just Got Real" – further ties the drink to an actual mimosa, as that cocktail is "most associated with brunch." According to defendant, when considering the entire context of the beverage and its packaging, a reasonable consumer would know that it contains no champagne.

At the core of this case is a familiar inquiry: whether a food or beverage ought to include ingredients associated with its purported flavor, or whether the presence of the flavor itself, regardless of its source, is sufficient to make the description accurate. In answering that question, it is essential to consider the background information that consumers bring with them into the store. For instance, all else equal, consumers are more likely to expect that a product

---

[4] Rebecca Jennings, *Hard Seltzer Is Here to Stay*, Vox, Aug. 20, 2019, https://www.vox.com/the-goods/2019/8/20/20812814/white-claw-truly-hard-seltzer-explained; "Hard Seltzer," available at https://en.wikipedia.org/wiki/Hard_seltzer.

9

marketed as "fruit juice" would contain juice from an actual fruit, as compared to a product marketed as a "lollipop." These expectations come from consumers' prior experiences with both types of products, which inform their commonsense intuitions about what those products likely contain. When examining an unfamiliar product, it is foundational to know what type of product it is. Categories like "detergent," "toy," and "soda" act like lenses, modifying how consumers see other aspects of those products and form their reasonable expectations about them.

Given how important background knowledge is to the formation of reasonable expectations, it is somewhat surprising that courts disagree about whether it is an appropriate consideration. Some courts take the position that it is improper to "resolve questions regarding the background knowledge, experience, and understanding of reasonable consumers as a matter of law." Cooper v. Anheuser-Busch, LLC, 553 F. Supp. 3d 83, 104 (S.D.N.Y. 2021) (cleaned up). This aversion to investigating consumers' background knowledge comes from the proposition that "a federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare" what consumers know. See Verizon Directories Corp. v. Yellow Book USA, Inc., 309 F. Supp. 2d 401, 407 (E.D.N.Y. 2004).

But the Second Circuit is clear that it is proper for courts to determine whether a statement would deceive a reasonable consumer. Chen, 954 F.3d at 500. That task would be impossible without considering what reasonable consumers know about the products they purchase. And there is nothing unreasonable about that, as judges purchase consumer goods and even partake of the occasional alcoholic beverage as do lay people (well, as to the latter, maybe not all judges). Indeed, in affirming the dismissal of a false labeling claim about truffle-flavored oil, the Court implied that consumers would know basic information about truffles, including that they are perishable and expensive, and would therefore realize that a moderately priced oil

10

would not contain actual truffles.  See Jessani, 744 Fed. App'x at 19.  Although it would be unfair to treat consumers as omniscient or overly technical[5], it is both helpful and necessary to consider their basic knowledge about products when attempting to determine their reasonable expectations.

Vizzy is indisputably labeled as a "hard seltzer."  Those words immediately follow the word "mimosa," in the same typeface and font size as that word, and appear on the front and center of the can and box.  Reasonable consumers would not read the first word and completely ignore the other two.  Rather, the very first thing they would learn about this product is that it is a mimosa hard seltzer.  To the extent that any reasonable consumers would question whether the product contained champagne at first glance, every other aspect that they would consider would be colored by their initial awareness that the product was a variety of hard seltzer.

Plaintiffs do not allege that hard seltzers ordinarily, or even occasionally, contain champagne.  Indeed, they do not claim to have ever come across a hard seltzer made with champagne.  Because a champagne-based hard seltzer is not the norm, a reasonable consumer would expect that if a hard seltzer had champagne in it, the packaging would make that fact abundantly clear.

Warren v. Coca-Cola Co., 670 F. Supp. 3d 72 (S.D.N.Y. 2023), is on all fours with this case.  There, the plaintiff (represented by the same counsel as our plaintiffs) argued that a "margarita hard seltzer" was misleading because the beverage did not contain tequila, an ingredient that the plaintiff argued was essential to margaritas.  The court held that "a reasonable

---

[5] For example, it seems to be expecting too much to assume that reasonable consumers would know that "chocolate must be mixed with some significant amount of fat or oil to create a coating that would solidify around an ice cream bar," as the food chemistry and thermodynamics underlying that assertion are probably not common knowledge. See Puri v. Costco Wholesale Corp., No. 21-cv-1202, 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021).

consumer viewing the Product's label as a whole would understand that they were purchasing a hard seltzer made to taste like a margarita and not a ready-to-drink margarita cocktail." Id. at 83.

In reaching that conclusion, the court suggested that reasonable consumers know that hard seltzers, unlike canned cocktails, do not ordinarily contain tequila, a fact that influenced how reasonable consumers would view the other representations on the product. The court also found that the lack of tequila in the ingredient list would cure any question that a reasonable consumer might have had before reading the label, rejecting the plaintiff's argument that reasonable consumers could have interpreted the "alcohol" listed on the label to have meant tequila.

The inclusion of the words "hard seltzer" in Vizzy's name and advertising likens this case to Warren and distinguishes it from the canned alcoholic beverage cases on which plaintiffs rely. For instance, in Cooper, the court declined to dismiss similar claims against beverages with names and flavor descriptions like "sangria spritz," "mojito fizz," and "sparkling cocktail." 553 F. Supp. 3d at 91. Here, by contrast, defendant never refers to the drink as a cocktail and never uses the word "mimosa" unless immediately followed by "hard seltzer." That alone would signal to the reasonable consumer that the beverage probably did not contain champagne.

To the extent that reasonable consumers would retain some uncertainty about the beverage after considering the front of the can, they could then turn it around and review the nutrition panel on the back for additional information. To that end, defendant emphasizes that the ingredient list makes no reference to champagne, which would dispel any question about it.

Plaintiffs respond that consumers should not be expected to scour the ingredient list to cure a misrepresentation. Although the Second Circuit has held that "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct

12

misleading information set forth in large bold type on the front of the box," Mantikas, 910 F.3d at 637, that was in the context of an objectively misleading representation about the product in question. Courts in this Circuit have generally interpreted Mantikas as applying only to direct misrepresentation cases, holding that ingredient labels can resolve consumer confusion in cases like this one, where the front of the package is, at worst, ambiguous. See, e.g., Brown v. Kellogg Sales Co., 2022 WL 992627, at *6 (S.D.N.Y. Mar. 31, 2022) ("a manufacturer may clarify an ambiguous interpretation of a label based on disclaimers and disclosures on the side or back of product packaging" and "the reasonable consumer would overcome any confusion by referring to the unambiguous ingredient list on the packaging").

Thus, reasonable consumers would check the ingredient list to cure any confusion they might have had regarding the front of the product and would see that Vizzy's ingredients do not include "champagne." Rather, the list includes a nondescript form of "alcohol." Again, in a vacuum, that word could be inclusive of champagne. Plaintiffs use that fact to argue that a confused consumer might still believe the product contained champagne, since the ingredient list does not explicitly state otherwise. However, given plaintiffs' allegation that consumers actively seek out drinks with champagne, in addition to their failure to allege hard seltzers are ordinarily (or ever) made with champagne, it would be odd that Vizzy would have spiked its seltzer with champagne without making that abundantly clear. A reasonable consumer who was initially confused by the product's name would pause on the vague ingredient of "alcohol," note the absence of the ingredient "champagne," and have some serious doubts about whether the drink contained any champagne. See Warren v. Whole Foods Mkt. Grp., Inc., 574 F. Supp. 3d 102, 117 (E.D.N.Y. 2021) ("consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight"); see also Devane v.

13

L'Oréal USA, Inc., 2020 WL 5518484, at *4 (S.D.N.Y. Sept. 14, 2020) ("[I]t is not reasonable to assume that a product contains a certain ingredient when it is not listed in the ingredient list.").

Vizzy's context is informed not only by its affirmative representations, but also by its omissions. Defendant notes that there are no pictures of mimosas, champagne, or grapes anywhere on the packaging. This further distinguishes Vizzy from the products at issue in Cooper, as the packaging there included images of wine and cocktail glasses, implying that the beverages contained wine or spirits. In contrast to the absence of champagne-related imagery, Vizzy's packaging includes imagery of fruits that the cans actually contain. The box advertises that Vizzy is made with real orange juice, the cans include pictures of oranges, and the ingredient list confirms that the drink is made with orange juice concentrate. Vizzy's direct references to orange juice, juxtaposed against its lack of reference to champagne, should make the confused consumer think again: if the product contained champagne, why not say so?

Defendant urges the Court to consider additional background knowledge to understand the full context in which the reasonable consumer would approach Vizzy. In Warren, the court considered two additional contextual factors, the product price and the location of purchase, in holding that a reasonable consumer would have known the product was a flavored seltzer, not a canned cocktail. Echoing that court's reasoning, defendant argues that Vizzy's price was too low for a reasonable consumer to believe that it contained champagne and that plaintiffs should have known that the stores in which they allegedly purchased the product were prohibited by New York law from selling beverages containing wine.

Taking the second point first, defendant goes too far. It is unreasonable to assume that an ordinary consumer has a sufficiently intimate familiarity with the New York Alcoholic Beverage Control Law to know that bodegas and grocery stores cannot sell wine. Although there are

14

circumstances in which a reasonable consumer should know that certain products cannot be sold at certain stores (e.g., consumers cannot reasonably be surprised that a water gun purchased at a toy store is not a military-grade firearm), it is not unreasonable to assume that a store selling certain types of alcoholic beverages is permitted to sell others.[6] The alcohol industry is so permeated with federal, state, and local regulation that a consumer well might not appreciate whether a hard seltzer is available at a liquor store, a pharmacy, a grocery store, or a discount retailer (or some combination of these). It is therefore unnecessary to determine whether bodegas and grocery stores are legally permitted to sell a champagne-infused seltzer. Even if defendant is correct that they are not, it would still be reasonable for a consumer to believe otherwise.

Defendant's pricing argument fares better. Plaintiffs have not alleged that Vizzy is sold at a higher price than "normal" hard seltzers. Although it is possible that a seltzer made with a particularly inexpensive champagne could sell at the same price point as those made with cheaper forms of alcohol (approximately $1.50 per 12-ounce can), all else equal, a reasonable consumer would assume that a champagne-based seltzer would sell at a price premium. See, e.g., Brumfield v. Trader Joe's Co., No. 17-cv-3239, 2018 WL 4168956, at *3 (S.D.N.Y. Aug. 30, 2018) ("reasonable consumer of truffle flavored oil would know something about the expense and rarity of truffle, signaling that the $4.99 price" was "too good to be true"). That is especially true where, as here, the reasonable consumer knows the product to be a hard seltzer and the packaging does not include any direct references to champagne. A consumer who had any

---

[6] This is particularly true given the advent of low-ABV beverages (the kind that can be sold at bodegas and supermarkets in New York) that arguably masquerade as hard liquor, further sowing confusion about which kinds of alcohol can be sold at different types of stores. See, e.g., Del Rosario v. Sazerac Co., Inc., No. 23-cv-1060, 2023 WL 6318083, at *2 (S.D.N.Y. Sept. 28, 2023) (describing malt liquor product that closely resembled an identically named whiskey).

question about Vizzy's contents would view the low price as yet another indication that it did not contain champagne.

There is one other factor not listed by Judge Brown that is worth considering in these cases. Lest we stifle development and distribution of innovative forms of consumer products in the name of avoiding consumer "deception," we have to give manufacturers reasonable leeway in marketing their products without handcuffing them with lawsuits. There is a high transactional cost associated with litigation that ultimately has to be passed on to consumers and may push the price of new products beyond affordability.

Of course, there is no doubt that a manufacturer who tricks consumers into buying something that they really don't want by misrepresenting what it is should be called to account. But when a manufacturer's marketing effort merely suggests that the product "tastes like" something, e.g., a mimosa, that claim is what the consumer is interested in. If the manufacturer's advertising is wrong, and it does not taste like what the label says it tastes like, then the consumer is not going to buy it again and the product will fail. The market is a much more efficient check on that kind of representation than lawsuits.

Taking all this contextual information into account, reasonable consumers would not have believed that Vizzy contained champagne. The only representations that could arguably suggest the presence of champagne are Vizzy's name and brunch-related advertising. Plaintiffs attempt to capitalize on a slight ambiguity by engaging in a strained reading of the product, fixating on those two aspects while willfully ignoring the rest of the product and their basic intuition. A reasonable consumer would not do that. See Warren, 670 F. Supp. 3d at 83 ("a reasonable consumer viewing the Product's label as a whole would understand that they were purchasing a hard seltzer made to taste like a margarita and not a ready-to-drink margarita cocktail"); Daniel v.

16

Mondelēz Intl., Inc., 287 F. Supp. 3d 177, 193 (E.D.N.Y. 2018) ("A reasonable consumer does not lack common sense.").

There might exist some small subset of consumers (presumably our plaintiffs) who reached the wrong conclusion about Vizzy's contents. Perhaps if defendant had taken a different approach in marketing its product – such as by specifying the type of alcohol it used, clarifying that it was merely "mimosa-flavored," or naming it something else entirely – it would have been even clearer that Vizzy did not contain champagne. But in determining whether defendant went too far, it is not enough for plaintiffs to allege that they were personally confused by Vizzy. Rather, plaintiffs must plausibly allege that a "significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Jessani, 744 F. App'x at 19. That is not the case here. All defendant's marketing did, at most, was suggest that its product yielded a taste that would remind the consumer of a mimosa, not that it actually contained champagne.[7]

---

[7] Defendant correctly notes that plaintiffs abandoned certain points by failing to oppose defendant's arguments. Plaintiffs' allegations regarding stevia are deemed abandoned, as plaintiffs offered no response to defendant's compelling arguments against them. See In re AppHarvest Sec. Litig., 684 F. Supp. 3d 201, 255 (S.D.N.Y. 2023). The same is true of plaintiffs' allegations regarding violations of the Tobacco Tax and Trade Bureau regulations and 27 CFR Part 7, which plaintiffs implicitly concede do not apply to Vizzy, as it is not made with malt liquor. Plaintiffs also make clear that their arguments regarding those regulations are subsumed within their GBL claims, which fail for the reasons stated above.

## CONCLUSION

Defendant's [14] motion to dismiss is granted.  The parties' [19] motion for an extension of the discovery period is denied as moot.

**SO ORDERED.**

*Brian M. Cogan*<br>U.S.D.J.

Dated:  Brooklyn, New York
        August 6, 2024